**Norman BROPHY, Plaintiff,**

v.

**CINCINNATI, NEW ORLEANS, & TEXAS PACIFIC RAILWAY COMPANY, Defendant.**

No. C–1–93–0828.

United States District Court, S.D. Ohio, Western Division.

June 10, 1994.

Robert Peirce, Jr., Pittsburg, PA, for plaintiff.

James O'Connell, Cincinnati, OH, for defendant.

### ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon Defendant's motion for summary judgment (Doc. 14), Plaintiff's memorandum in opposition thereto (Doc. 16), and Defendant's reply. (Doc. 15).

### Procedural History/The Parties' Claims

On September 1, 1994, Plaintiff Norman D. Brophy filed a complaint under the Federal Employer's Liability Act ("FELA") [45 U.S.C. § 51] against his former ' employer, Defendant Norfolk Southern Railway Company (formerly doing business as the Southern Railway Company). (Doc. 1). Plaintiff requests that Defendant be found liable to him for hearing loss he allegedly suffered due to prolonged exposure to noise on his job. (Doc. 1, pp. 2–4).

On May 5, 1994, Defendant filed a motion for summary judgment based upon the defense of accord and satisfaction. (Doc. 14). In support thereof, Defendants set forth a copy of a document entitled "Settlement Agreement" and signed by Plaintiff on March 11, 1987. (*See* Brophy Deposition Exhibit 1 appended to Doc. 14).

The settlement agreement outlines the settlement between Plaintiff and Defendant of a prior claim brought under the FELA. This prior case concerned injuries that the Plaintiff suffered when he fell from a moving locomotive. (Brophy deposition transcript p. 105).

The settlement agreement is a six page document under which the Defendant agreed to pay the Plaintiff a lump sum of $265,000 in addition to monthly payments of $1000 over a twenty year period. Paragraph Three of the settlement agreement provides the following language:

Claimant [Plaintiff] understands that he may have suffered injuries that are unknown to him at present and that unknown consequences of present known injuries may arise, develop or be discovered in the future, including subsequent death or disability. Claimant acknowledges that the consideration received under this Settlement Agreement is intended to and does release and discharge any claims by Claimant in regard to such unknown or future complications, including effects and consequences thereof and regardless of mistake of fact or mistake of law, and Claimant does hereby waive any rights to assert in the future any claims not now known or suspected even though if such claims were known, such knowledge would materially affect the terms of this Settlement Agreement. (*See* Brophy Deposition Exhibit 1 appended to Doc. 14).

Defendant points out that at the time Plaintiff signed the settlement agreement, he was ably represented by counsel.

Defendant argues that Plaintiff cannot maintain this action against it based on the clear, unambiguous and broad language of the settlement agreement. Plaintiff contends that the settlement agreement does not bar this action because he did not become aware of his hearing loss until 1991 or 1992— well after he signed the settlement agreement. (Brophy deposition transcript p. 36).

## OPINION

### Summary Judgement Standard

■ The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

■ The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

■ The function of the court is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* 477 U.S. at 249, 106 S.Ct. at 2510. Unless evidence exists that is sufficient to sustain a jury verdict in the nonmovant's favor, no genuine issue for trial exists. *Id.* (citing *Cities Service,* 391 U.S. at 288–89, 88 S.Ct. at 1592–93)). If the evidence is merely colorable, *Dombrowski v. Eastland,* 389 U.S. 802, 88 S.Ct. 13, 19 L.Ed.2d 57 (1967), or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may not be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### Standard for Interpreting Releases in FELA Matters

■ Federal law governs the validity of a release in any FELA action. *Maynard v. Durham & S. Ry.,* 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961) (citing *Dice v. Akron, Canton & Youngstown R.R.,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952)). The party who attacks a release under federal law bears the burden of establishing the purported release's invalidity. *Callen v. Pennsylvania R.R.,* 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948). The party attacking the release may meet this burden by showing that the release was not supported by adequate consideration, that he was defrauded, or that he and the other party to the release acted under a mutual mistake of fact as to the settlement. *See Maynard,* 365 U.S. at 163, 81 S.Ct. at 563; *Callen,* 332 U.S. at 630, 68 S.Ct. at 298.

### Discussion and Analysis

■ In his memorandum of opposition, Plaintiff contends that there are genuine issues of material fact regarding the application of the release to plaintiff's hearing loss claim. He first asserts that the language of the release is ambiguous by pointing to language in Paragraphs One, Two, Four and Seven of the settlement agreement and demonstrating how that language could be interpreted to apply only to the injury that was the subject matter of the prior claim. Plaintiff omits any discussion of the above quoted Paragraph Three. The language of that paragraph, even when read in light of the rest of the settlement agreement, is capable of but one reasonable interpretation—the Plaintiff released the Defendant of liability for any injury, known or unknown, that the Plaintiff may have suffered.

Accordingly, the true issue before the court is not whether the Plaintiff released the Defendant from liability. Rather, the issue is whether that release is valid as to the Plaintiff's hearing loss claim.

In order to support his contention that the release should not cover the hearing loss, Plaintiff raises the doctrine of mutual mistake and insists that the parties entered into the release under the mistaken belief that

the injuries from falling off the locomotive were the only injuries that Plaintiff had suffered. Plaintiff further asserts that because of this mistake, the parties could not have contemplated or intended for the release to apply to a hearing loss that was discovered subsequent to the execution of the release.

Plaintiff has not, however, set forth any facts to support his contention that there is a triable issue as to the mutual mistake of the parties to the release. Even Plaintiff's deposition transcript contains no mention of Plaintiff's state of mind when he signed the release. He simply claims that a mistake was made by the parties and prays for the equitable invalidation of the release.

Conversely, Defendant has provided an affidavit of one G.E. Lewis, an employee of Defendant who negotiated the release agreement with Plaintiff. According to Mr. Lewis, it was the express intention of the Defendant for the release to apply to all possible claims that Plaintiff may possibly have against Defendant under the FELA. Mr. Lewis' statement is amply supported by the unambiguous wording of the release. As established above, Plaintiff bears the burden of establishing that the release should be invalid. Under this standard, Plaintiff must point to something—some evidence that might support his contention. A vacuum, even when construed most favorably, cannot be relied upon to preserve a question for a jury.

Next Plaintiff contends that because his cause of action for the hearing loss had not accrued at the time of the execution of the release, he could not waive his right to file a claim. Accepting as fact the Plaintiff's claim that he had no knowledge of the hearing loss until 1990 or 1991, clearly his claim had not accrued at the time he signed the release. *See Albert v. Maine Cent. R. Co.,* 905 F.2d 541 (1st Cir.1990) (cause of action for hearing loss accrues when plaintiff becomes aware of the injury); *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092 (7th Cir.1990) (same). A tired yet valid maxim of the property law is that one cannot sell what one does not own. By extension, if one does not have

a right, he may not exchange consideration for his ability to assert that right. *See Manis v. CSX Trasnp., Inc.,* 806 F.Supp. 177 (N.D.Ohio 1992).

The problem with this argument is that, from a policy standpoint, it would absolutely preclude the possibility that an employer may pay a former employee in order to terminate, fully and finally, all relationships between them. As long as the employee is alive (and even for a few years after he dies) he may be able to establish some new malady that was supposedly brought about by the negligence of the employer. At no point would the employer and the employee be allowed to negotiate what both consider to be a fair sum for the employee's agreement not to ever sue the employer.

However, is such freedom of contract inherently more valuable than the policies that Congress intended the FELA to promote? A reading of 45 U.S.C. § 55[1] indicates that Congress intended to remove the ability of employees to sell off their FELA rights in exchange for short term gains as well as the ability of employers to pressure or defraud their employees into signing away those same rights. Granted, releases have been held valid under 45 U.S.C. § 55, *see Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948), but the rationale for that holding was that "a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility." *Id.* at 631, 68 S.Ct. at 298.

In the instant case, the release goes beyond merely compromising a claimed liability and purports to exempt Defendant for all FELA liability arising out of Plaintiff's employment. The fact that Plaintiff was injured in an accident and reached a settlement with the employer should not serve to lift the restriction on employers from attempting to escape FELA liability by written instrument. The danger of employers pressuring employees still exists when the parties are reaching a settlement agreement. This Court questions, for example, whether a $1,000 dollar

---

1. 45 U.S.C. § 55 provides in part: "Any contract ... or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

settlement for a broken arm should exempt the employer from a later $500,000 asbestos claim. To allow such a settlement between Plaintiff and Defendant to defeat § 55 would fly directly in the face of the statutory language.

Accordingly, the release is not valid to exempt Defendant from liability for Plaintiff's hearing loss.

### Conclusions of Law

██ Pursuant to 45 U.S.C. § 55, a valid release cannot exempt an employer from FELA liability for injuries that an employee already has incurred so long as (1) the employee is unaware of the injury at the time of the signing of the release and (2) the employee's unawareness is reasonable. *See Manis v. CSX Trasnp., Inc.*, 806 F.Supp. 177 (N.D.Ohio 1992).

It is therefore ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.