680 S.E.2d 28

**Freda Marlene RATLIFF, as Executrix of the Estate of Sparrell Ratliff, Plaintiff Below, Appellant,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant Below, Appellee.**

No. 34156.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 2009.

Decided March 12, 2009.

Concurring Opinion of Chief Justice Benjamin July 27, 2009.

(1997) (identifying elements necessary to bar further prosecution under principles of *res judicata*).

Richard N. Shapiro, Hajek, Shapiro, Cooper, Lewis & Appleton, Virginia Beach, VA, Michael P. Giertz, Hartley & O'Brien, PLLC, Wheeling, WV, for the Appellant.

Patrick Casey, Darla Mushet, Burns, White & Hickton, Wheeling, WV, Attorneys for Amicus Curiae, Association of American Railroads.

Luke A. Lafferre, Alexis Mattingly, Huddleston Bolen LLP, Huntington, WV, for the Appellee.

DAVIS, Justice.[1]

In this action brought under the Federal Employer's Liability Act (hereinafter referred to as "the FELA"), Mrs. Freda Ratliff (hereinafter referred to as "Mrs. Ratliff"), in her capacity as executrix of the estate of her deceased husband, Mr. Sparrell Ratliff, Jr., plaintiff below and appellant herein, asks this Court to review an award of summary judgment in favor of Norfolk Southern Railway Company (hereinafter referred to as "Norfolk Southern"), defendant below and appellee herein. In determining whether summary judgment was appropriate, this Court must determine whether a release executed by Sparrell Ratliff, Jr., in connection with a voluntary separation program offered by his employer, Norfolk Southern, violates 45 U.S.C. § 55 (1908) (2000 ed.),[2] which prohibits employers from exempting themselves from FELA liability. After a review of the parties' briefs, the record submitted on appeal, the brief submitted by the Association of American Railroads as Amicus Curiae,[3] and having heard the oral arguments of the parties, we conclude that the circuit court erred in granting summary judgment to Norfolk Southern. Because Sparrell Ratliff, Jr.'s, release was executed in the context of a voluntary separation program, as opposed to being executed in compromise of a claimed liability, it must reflect a bargained-for settlement of a claim for mesothelioma in order to be valid under 45 U.S.C. § 55.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In 1947, when he was twenty-three years old, Sparrell Ratliff, Jr. (hereinafter referred to as "Mr. Ratliff"), began working for Norfolk & Western Railway Company (hereinafter referred to as "N & W"), a predecessor entity of the appellee, Norfolk Southern. He worked as a locomotive engineer. In 1986, after Mr. Ratliff had worked for N & W, and then for Norfolk Southern,[4] for nearly forty years,[5] and had reached the age of sixty, he received from Norfolk Southern several documents explaining a voluntary separation or early retirement program.[6] According to the deposition testimony of Marcellus Kirchner, who served as Norfolk Southern's director of labor relations in 1986, the purpose of the

---

1. Pursuant to administrative orders entered September 11, 2008, and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. 45 U.S.C. § 55 (1908) (2000 ed.) is also referred to as § 5 of the FELA. 45 U.S.C. § 55 (1908) (2000 ed.) states:

 Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled

thereto on account of the injury or death for which said action was brought.

3. We acknowledge our appreciation for the participation of the Amicus Curiae in this case.

4. The parties do not specify when N & W became Norfolk Southern, and such a determination is not necessary to our resolution of the instant matter.

5. Mr. Ratliff actually worked for N & W and Norfolk Southern for a total of approximately thirty-eight years. During his years of employment, Mr. Ratliff worked on steam locomotives in numerous counties in West Virginia and was allegedly exposed to asbestos. It is claimed that, during his employment, Mr. Ratliff received no instruction or training on how to properly handle asbestos, was never warned about the hazards of asbestos, and was never provided with any respiratory protection.

6. This voluntary separation program was offered to train and engine service employees, which included locomotive engineers.

voluntary separation program was to "reduce staffing levels in order to reduce employment costs either by eliminating redundant positions or replacing existing employees with lower-compensated employees."

The cover letter to the documents that Mr. Ratliff received described the "highlights" of the voluntary separation program as follows:

A $35,000 separation allowance for active engine service employees with engine service seniority prior to November 1, 1985[.] [7]

A $25,000 separation allowance for active train service employees with engine service seniority prior to November 1, 1985[.]

Health and welfare coverage until age 65 for those employees over age 55[.]

A death benefit of $10,000 for those employees over age 55.

(Footnote added). An included "Program Description" provided additional detail regarding the program, and stated, inter alia, that, in order to participate in the program, an employee would be required to execute a resignation and release that "is a total and absolute release of any employment rights with any Norfolk Southern Company and of any claims of any kind whatsoever arising from your employment relationship with the Company." [8] A copy of the resignation and release document that employees would be required to execute in order to participate in the program was also included, along with an "Application for Participation in Separation Program." Mr. Ratliff applied for the program and was approved. Accordingly, he executed the required resignation and release, which stated in relevant part:

I, S. RATLIFF, JR., [social security number omitted], in consideration of the sum of THIRTY–FIVE THOUSAND DOLLARS ($35,000.00), the receipt of which is hereby acknowledged, hereby resign and surrender any right to employment by Norfolk Southern Corporation, Norfolk and Western Railway Company, Southern Railway Company or any employer affiliated with or controlled by any of the aforenamed companies, for convenience referred to hereinafter collectively as the "Company", *and hereby release and forever discharge the Company from any claim (with the exception of vested pension rights), demand, action or cause of action, of any kind whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment by the said Company, or the termination thereof, including but not limited to any claim or right asserted under or arising out of any agreement, regulation, condition or statute affording me employment protection, protecting me from employment or covering the conditions of my employment . . . .*

(Emphasis added). The release signed by Mr. Ratliff was identical to the sample release that was included in the information packet offering the voluntary separation program, with the exception that the actual release executed by Mr. Ratliff specified his name, social security number, the actual amount of the consideration he received, and the amount of taxes withheld therefrom. There is nothing in the record of this action indicating that Mr. Ratliff was represented by, or consulted with, a lawyer before signing the resignation and release.

In April 2005, nineteen years after his voluntary separation from Norfolk Southern, Mr. Ratliff was diagnosed with mesothelioma.[9] He died in July 2005. The instant FELA action was filed by Mrs. Ratliff, in her capacity as executrix of Mr. Ratliff's estate, in or around October 2005.[10] Norfolk South-

---

**7.** Mr. Ratliff qualified for the $35,000 separation allowance. The amount of $9,012.50 was withheld for federal and state income taxes, and Mr. Ratliff received a lump sum payment of $25,987.50.

**8.** "Company" referred to "any participating rail carrier subsidiary of Norfolk Southern Corporation."

**9.** Mesothelioma is "a malignant tumor of the covering of the lung or the lining of the pleural and abdominal cavities, often associated with exposure to asbestos." Random House Webster's Unabridged Dictionary 1205 (2d ed.1998).

**10.** In this FELA action, Mrs. Ratliff seeks personal injury and wrongful death damages based upon negligence, and violations of the Locomotive Inspection Act and the Federal Safety Appliance Act.

ern filed its answer denying liability, and, after a period of discovery, filed a motion for summary judgment asserting that the action was barred by virtue of the release that had been executed by Mr. Ratliff in connection with the voluntary separation program. Mrs. Ratliff subsequently filed her own motion for summary judgment asserting that, pursuant to the provisions of 45 U.S.C. § 55,[11] the release was void. Following a hearing, the circuit court indicated that it was inclined to grant summary judgment in favor of Norfolk Southern, but that it had been

> persuaded by counsel for plaintiff that a jury trial on the factual issue of intent would serve the interests of judicial economy in that a resolution of that factual issue might narrow the issues to be presented in any appeal of the judgment in this case. Therefore, the court determined to conduct a jury trial ... solely on the subject of the intent of the parties in entering into the Release, with the parties to conduct any additional necessary discovery on the subject of the Release before trial.

A pre-trial conference for the "intent" trial was scheduled for July 20, 2007. However, on that date, at the parties' request, the circuit court instead considered their renewed motions for summary judgment. The circuit court observed that Mrs. Ratliff "presented no new or additional evidence to support [her] argument" that the release was prohibited by 45 U.S.C. § 55, and observed further that Mrs. Ratliff had conducted discovery in anticipation of trial and had not suggested that she required additional time for further discovery. The circuit court found that "[t]he limiting words of the release are very specific," and that Mrs. Ratliff had presented "no evidence that the release was not intended to comprehend the alleged occupational injury alleged by the plaintiff." Additionally, the circuit court observed that there was no evidence of fraud, the consideration paid was sufficient to support the release, there was no mutual mistake of fact, and the risk of mesothelioma was known, at

least to Norfolk Southern, at the time the release was executed. Finally, the circuit court observed that Mrs. Ratliff

> has no direct evidence bearing on the issue of Mr. Ratliff's intent, since Mr. Ratliff died without testifying about the Release, since the plaintiff filed an affidavit saying that she and Mr. Ratliff never discussed the meaning and effect of the Release, and since the plaintiff has pointed to no witness or other direct evidence showing what Mr. Ratliff believed about the release beyond the text of the Release itself.

Accordingly, by order entered September 19, 2007, the circuit court granted summary judgment in favor of Norfolk Southern. This appeal followed.[12]

## II.

### STANDARD OF REVIEW

█ In the case *sub judice*, we are asked to determine the propriety of summary judgment granted in favor of Norfolk Southern. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "When undertaking our plenary review, we apply the same standard for granting summary judgment as would be applied by a circuit court." *Subcarrier Communications, Inc. v. Nield*, 218 W.Va. 292, 296, 624 S.E.2d 729, 733 (2005). Therefore, in conducting this plenary review, we are mindful that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Finally, we note that "[t]he circuit court's function at the summary judgment

---

11. For the text of 45 U.S.C. § 55, see note 2, *supra*.

12. This Court granted the petition for appeal only as to the limited issue of the validity of the release pursuant to 45 U.S.C. § 55.

stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Id.* With due consideration for the foregoing standards, we proceed to our discussion of the issues herein raised.

## III.

## DISCUSSION

The instant appeal presents this Court with an issue of first impression: whether a general release of all claims signed in connection with a voluntary separation (or early retirement) program violates § 5 of the FELA, codified at 45 U.S.C. § 55, which prohibits devices exempting employers from FELA liability.

Before addressing the substantive issue at hand, we pause briefly to acknowledge that our determination of this question must be founded upon federal law. In this regard, this Court has previously explained that

> we are constrained to follow federal case law interpreting FELA. Federal and state courts have concurrent jurisdiction of claims brought under FELA. 45 U.S.C. § 56 (1948) ("The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States." *Id.*, in part.) In FELA claims, although "a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, ... substantive issues concerning a claim under the [FELA] are determined by the provisions of the act and interpretative decisions of federal courts construing the [FELA][.]" *Chapman v. Union Pacific R.R.*, 237 Neb. 617, 467 N.W.2d 388, 393 (1991) (*citing, e.g., Monessen Southwestern R. Co. v. Morgan*, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); *St. Louis Southwestern R. Co. v. Dickerson*, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Chesapeake & Ohio R. Co. v. Kuhn*, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157 (1931)). Indeed, only if federal

law controls can FELA be given the "uniform application throughout the country essential to effectuate its purposes." *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952).... Thus, "'state courts are bound by interpretation of the ... [FELA] given by the federal courts.'" *Chapman*, 467 N.W.2d at 393 (internal citation omitted).

*McGraw v. Norfolk & Western Ry. Co.*, 201 W.Va. 675, 679, 500 S.E.2d 300, 304 (1997).

We begin our analysis with a review of the FELA provision that prohibits a common carrier from exempting itself from liability imposed by FELA. In this regard, § 5 of the FELA states:

> *Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55 (emphasis added).

Though the foregoing provision is broadly stated to exclude *any* device attempting to *exempt* a common carrier from *any* liability created under the FELA, the Supreme Court of the United States has recognized that there are circumstances under which a release would not violate § 5.[13] *See Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948).

In *Callen*, a railway brakeman allegedly sustained a severe and permanent back injury when he jumped from a railway car in an attempt to avoid a more serious injury. The brakeman subsequently brought a FELA ac-

---

**13.** Moreover, the United States Supreme Court has determined that 45 U.S.C. § 55 does not violate the Constitution of the United States. *See Mondou v. New York, N.H. & H.R. Co.*, 223 U.S. 1, 52, 32 S.Ct. 169, 176, 56 L.Ed. 327 (1912) ("[I]f Congress possesses the power to impose that liability, which we here hold that it does, it also possesses the power to insure its efficacy by prohibiting any contract, rule, regulation, or device in evasion of it.").

tion. One of the defenses asserted by his employer, Pennsylvania Railroad Company, was that he had executed a general release. The evidence presented established that the brakeman had received consideration of $250 in exchange for

> a general release of "all claims and demands which I have or can or may have against the said Pennsylvania Railroad Company for or by reason of personal injuries sustained by me" at the time and place involved in the suit. It also released claims for loss of time and expense, and recited that the payment was in compromise and not an admission of liability, that plaintiff read and understood the agreement and that the sum of money stated therein is all that he was to receive.

*Callen,* 332 U.S. at 626–27, 68 S.Ct. at 297, 92 L.Ed. 242. Following a verdict in favor of the brakeman in the amount of $24,990.00, Pennsylvania Railroad appealed to the Third Circuit. The Court of Appeals reversed the trial court, and remanded the case for a new trial based upon its finding that the trial court had incorrectly instructed the jury and, in so doing, had withdrawn from the jury the question of the validity of the release. On subsequent appeal to the United States Supreme Court, the Third Circuit's ruling was affirmed. Of relevance to the case at bar, the Supreme Court noted that the brakeman contended that the release violated 45 U.S.C. § 5 of the FELA insofar as the release rep-

resented an attempt by Pennsylvania Railroad to *exempt* itself from a liability created by the FELA. The Supreme Court observed that, because the case was being remanded, there would be an opportunity to resolve this issue at trial. Although the Supreme Court did not engage in a detailed analysis of 45 U.S.C. § 55, the Court commented that

> [i]t is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. *Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.*

332 U.S. at 631, 68 S.Ct. at 298–99, 92 L.Ed. 242. While the United States Supreme Court has, subsequent to *Callen,* addressed 45 U.S.C. § 55 in other contexts,[14] it has not conclusively settled the manner in which this section may properly be applied.[15]

Two federal circuit courts of appeal have, however, addressed the proper scope and application of § 5 of the FELA in light of the Supreme Court's holding in *Callen.*[16] The Sixth Circuit addressed this issue in *Babbitt v. Norfolk & Western Railway Co.,* 104 F.3d 89 (6th Cir.1997); and the Third Circuit case of *Wicker v. Consolidated Rail Corp.,* 142 F.3d 690 (3d Cir.1998), similarly explored the parameters of § 5 of the FELA.[17]

**14.** *See, e.g., Dice v. Akron, Canton & Youngstown R.R. Co.,* 342 U.S. 359, 362, 72 S.Ct. 312, 314–15, 96 L.Ed. 398 (1952) (holding that "a release of rights under [the FELA] is void when the employee is induced to sign it by the deliberately false and material statements of the railroad's authorized representatives made to deceive the employee as to the contents of the release."); *Boyd v. Grand Trunk Western R.R. Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (per curiam) (concluding that agreement limiting venue in which employee could bring FELA action violated 45 U.S.C. § 55).

**15.** The *Callen* Court did, however, clarify that that "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by mutual mistake under which both parties acted." *Callen v. Pennsylvania R.R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948).

**16.** *See Illinois Cent. R.R. Co. v. Acuff,* 950 So.2d 947, 959 (Miss.2006) ("Notably, two federal courts of appeals have considered the effect a prior release may have on future claims against an employer, and their decisions are instructive.").

**17.** While we find the decisions of the federal circuit courts of appeal to be valuable persuasive authority in resolving questions of federal law, we note that we are not bound by those decisions. "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, *Chesapeake & O R Co v. Martin,* 283 U.S. 209, 220–221, 51 S.Ct. 453, 75 L.Ed. 983 (1931), there is no similar obligation with respect to decisions of the lower federal courts...." *Jaqua v. Canadian Nat'l R.R.,* 274 Mich.App. 540, 546, 734 N.W.2d 228, 231–32 (2007) (internal citation omitted) (citing generally 21 CJS *Courts* § 159, at 195–97; 20 Am.Jur.2d *Courts* § 171 at 454–55). *See also Aswad v. Norfolk Southern Ry. Co.,* No. 04–2536, 2006 WL

*Babbitt* involved several former employees of Norfolk & Western Railway Company (hereinafter referred to as "N & W") who, similar to Mr. Ratliff, signed a general release as part of a voluntary separation program. Subsequent thereto, the employees sued N & W under the FELA seeking damages for hearing loss. N & W defended on the basis of the release the employees had signed at the time of their voluntary separation. In determining whether the releases violated § 5 of the FELA, the Sixth Circuit observed that "it is clear that the purpose of [the] FELA, as stated in 45 U.S.C. §§ 51 and 55, is to require negligent railroads to assume liability for injuries to employees in the course of their employment." *Babbitt,* 104 F.3d at 91 (citations omitted). The court went on to note, however, that a release "may constitute a settlement or compromise, rather than an attempt to escape liability" in which case such a release would not run afoul of the FELA. *Babbitt,* 104 F.3d at 92 (citing *Callen,* 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242).

The *Babbitt* court reviewed the decision in *Callen,* and distinguished that case from two earlier opinions by the Supreme Court of the United States: *Philadelphia, Baltimore, & Washington Railroad Co. v. Schubert,* 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912), and *Duncan v. Thompson,* 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942).[18] The *Babbitt* court then reasoned that, unlike *Schubert* and *Duncan, Callen* involved "a contract that settled an actual controversy." 104 F.3d at 92. The court explained that

> [i]n contrast [to *Callen,*] *Schubert* and *Duncan* did not involve express agreements to settle claims for specific injuries,

but instead centered around a general release. Because the releases in *Schubert* and *Duncan* had granted general immunity to the railroad, as opposed to addressing a specific instance of disputed liability, they were void.

*Babbitt,* 104 F.3d at 92–93. The *Babbitt* court then reasoned that,

> [i]n light of this case precedent, it is clear that FELA is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee. *Schubert,* 224 U.S. at 612, 32 S.Ct. at 591–92; *Duncan,* 315 U.S. at 7, 62 S.Ct. at 424 (stating that a "bona fide compromise and settlement of claims arising under the act" passes muster); *Boyd v. Grand Trunk Western R. Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (noting that a "full compromise enabling the parties to settle their dispute without litigation" does not contravene FELA); *South Buffalo Ry. Co. v. Ahern,* 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953) (stating that "full and fair compromises of FELA claims do not clash with the policy of the Act").

> Consequently, where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. *However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability* .... To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt

1063297, at *9 (Va.Cir.Ct.2006) ("the Court is mindful of the fact that state courts are not required to follow the interpretation of federal law from lower federal courts, such as the Courts of Appeals or District Court with jurisdiction over their state territory, even on matters relating to the Constitution of the United States, much less a federal statute.... Therefore, where the U.S. and Virginia Supreme Courts have not directly addressed the issue, the Court may look for guidance to FELA cases from all federal and state jurisdictions." (internal citations omitted)).

**18.** In *Philadelphia, Baltimore, & Washington Railroad Co. v. Schubert,* 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912), the Court found that

§ 5 of the FELA was violated by an agreement stipulating that an employee's acceptance of benefits from an employer-operated relief fund functioned as a release and satisfaction of all claims against the company. In *Duncan v. Thompson,* 315 U.S. 1, 7, 62 S.Ct. 422, 424, 86 L.Ed. 575 (1942), the Court held that a general release in which an employee promised to settle his claim in good faith, given in exchange for an advance of living expenses, was not a valid bar to recovery under the FELA where the employee never actually settled the claim, and where the money advanced was for living expenses rather than for settlement of the claim.

to extinguish potential future claims the employee might have arising from injuries known or unknown by him.

104 F.3d at 93 (emphasis added) (internal citation omitted). Because the lower court had not analyzed whether the releases at issue had been executed by the *Babbitt* plaintiffs in settlement of their specific hearing loss claims, the Sixth Circuit reversed and remanded the case for such a determination. *See also Damron v. Norfolk & Western Ry. Co.*, 925 F.Supp. 520, 526 (N.D.Oh.1995) (finding release executed as part of voluntary separation program was void under 45 U.S.C. § 55 due to absence of compromise of claimed liability as required by *Callen*, and commenting "[t]his court has difficulty fathoming how a release obtained under such circumstances could be construed as a compromise."). Cf. *Jaqua v. Canadian Nat'l R.R.*, 274 Mich.App. 540, 551, 734 N.W.2d 228, 234 (2007) (observing that "[c]learly the Supreme Court requires that the release be pursuant to a controversy with regard to the employer's liability and the extent of that liability for a particular accident or exposure.... Accordingly, a release must relate to a specific claim, such as a railroad's liability for injuries caused by asbestos exposure, rather than being a blanket release of liability for any occupational illnesses ...." (internal citation omitted)).

The Third Circuit case of *Wicker v. Consolidated Rail Corp.*, 142 F.3d 690, on the other hand, involved five former employees who filed FELA actions against their former employer claiming injury resulting from their exposure to toxic chemicals. Each of the employees had previously executed a general release *in the course of settling an unrelated FELA claim.*[19] "While the releases were not identical, each appeared to settle all claims for all injuries past and future." *Wicker*, 142 F.3d at 692. Additionally, each plaintiff "negotiated his release in the context of terminating, or already having termi-

nated, his employment with Conrail." *Id.* at 694. In determining whether the releases were void under § 5 of the FELA, the *Wicker* court observed that

[t]o be valid under FELA, a release must at least have been *executed as part of a negotiation settling a dispute between the employee and the employer. Schubert*[20] and *Duncan*[21] hold that a release of FELA claims given as a condition of employment, *or signed without negotiation, is void* under § 5. As noted, the holding in *Babbitt* was based in part on the fact that the releases formed part of a voluntary separation program, and were not the product of negotiations settling a claim. *See also Damron v. Norfolk & Western Railway Co.*, 925 F.Supp. 520, 525 (N.D.Ohio 1995).

142 F.3d at 700 (footnotes and emphasis added). The *Wicker* court declined to apply the *Babbitt* test, commenting that

[a] bright line rule like the one set forth in *Babbitt*, limiting the release to those injuries known to the employee at the time the release is executed, has the benefit of predictability. Under *Babbitt*, a release must reflect a bargained-for-settlement of a known claim for a specific injury, and contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him. 104 F.3d at 93....

Yet, it is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages relat-

---

**19.** Three of the employees had settled an earlier claim for a back injury, and two had settled asbestos-related claims.

**20.** *Philadelphia, Baltimore, & Washington R.R. Co. v. Schubert*, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912).

**21.** *Duncan v. Thompson*, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942).

ed to known risks even if there is no present manifestation of injury.

142 F.3d at 700–01.

Accordingly, the *Wicker* court, applying *Callen,* held that

a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute "controversies," and may not be waived under § 5 of FELA. *See Callen,* 332 U.S. at 631, 68 S.Ct. at 298–99. For this reason, a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure—allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate § 5 of FELA.

142 F.3d at 701. The *Wicker* court went on to explain that,

[t]o the extent that a release chronicles the scope and duration of the known risks, it would supply strong evidence in support of the release defense. But we are wary of making the validity of the release turn on the writing alone because of the ease in writing detailed boiler plate agreements; draft releases might well include an extensive catalog of every chemical and hazard known to railroad employment. For this reason, we think the written release should not be conclusive. We recognize that what is involved is a fact-intensive process, but trial courts are competent to make these kinds of · determinations. While the elusiveness of any such determination might counsel in favor of a bright-line rule such as the Sixth Circuit adopted in *Babbitt,* we decline to adopt one here.

Instead, we conclude that a release may be strong, but not conclusive, evidence of the parties' intent. Where a specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she intended to release liability for it. Furthermore,

where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent. We recognize that this is a different (and more difficult) standard for railroad employers than is typical in non-FELA situations, but given the Supreme Court's pro-employee construction of the FELA, *see Kernan v. American Dredging Co.,* 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958) ("it is clear that the general congressional intent was to provide liberal recovery for injured workers"); *Boyd,* 338 U.S. at 265, 70 S.Ct. at 27 ("Congress wanted Section 5 to have the full effect that its comprehensive phraseology implies.") (internal quotation omitted), we adopt it.

*Id.* Applying this standard to the five cases before it, the *Wicker* court observed that there was no dispute that all of "the agreements *were reached during settlement negotiations,* and that the plaintiffs were all represented by counsel." 142 F.3d at 701 (emphasis added). However, the releases failed to demonstrate that the parties "understood, let alone addressed or discussed, the scope of the claims being waived," and therefore did not show that "the employees knew of the actual risks to which they were exposed and from which the employer was being released." *Id.* In the absence of any evidence that the plaintiffs were "aware of the potential health risks to which [they] had been exposed, ... they could not have properly waived these claims." *Id.* at 702. For this reason, the *Wicker* court concluded that all of the releases violated § 5 of the FELA.

Subsequent cases that have analyzed the *Babbitt* and *Wicker* decisions appear to have concluded that *Babbitt* and *Wicker* each set out a general test to be applied under any circumstances in which a court is asked to evaluate the validity of a release under § 5 of the FELA. *See, e.g., Jaqua v. Canadian Nat'l R.R., Inc.,* 274 Mich.App. 540, 734 N.W.2d 228 (2007); *Illinois Cent. R.R. Co. v. Acuff,* 950 So.2d 947 (Miss.2006); *Sinclair v. Burlington N. & Santa Fe Ry. Co.,* 347 Mont. 395, 200 P.3d 46 (2008); *Oliverio v. Consol. Rail Corp.,* 14 Misc.3d 219, 822

N.Y.S.2d 699 (N.Y.Sup.Ct.2006); *Aswad v. Norfolk S. Ry. Co.*, No. 04–2536, 2006 WL 1063297 (Va.Cir.Ct.2006). Because the two tests are not in accord, these courts have indicated a need to select between them. We disagree with this conclusion.

A careful review of *Babbitt* and *Wicker* demonstrates a key difference between the two cases. *Babbitt* involved employees who signed a general release in connection with a voluntary separation (or early retirement) program, and who were not engaged in settling any specific FELA claims with their employer. Notably, *Babbitt* found that the facts before it were distinguishable from *Callen* and applied other Supreme Court precedent. *Wicker*, on the other hand, dealt with employees who had executed general releases in the course of *settling FELA claims*, and represents an extension of *Callen.* Thus, we perceive that the *Babbitt* and *Wicker* cases actually set out different standards to be applied in different circumstances. The rationale for such a distinction lies with the posture of the employee in executing a release.

▪ A *Wicker*-type employee is involved in negotiating a FELA claim and, therefore, meets the requirement of *Callen* that a controversy exist. Under this circumstance, a release does not violate § 5 of the FELA so long as the risk released was one known to the parties and was a risk the employee intended to release. A *Babbitt*-type employee, on the other hand, is not negotiating the settlement of a claim. A *Babbitt* employee has merely agreed to a voluntary end to his or her employment. Unlike an employee who is negotiating a FELA claim, an employee who is participating in a voluntary separation program is not engaged in a controversy as to liability as contemplated by the Supreme Court in *Callen.* As one court has observed, an employee who has signed a release in connection with a voluntary separation program "might not have been alert to the reality that he was in an adversarial situation with the attendant need for heightened care." *Aswad v. Norfolk Southern Ry.*

Co., No. 04–2536, 2006 WL 1063297, at *18. Accordingly, a heightened standard is required when scrutinizing a release that is executed outside the context of a controversy.

▪ We believe that imposing a heightened standard upon a release signed in the context of a voluntary separation program, as was done in *Babbitt,* is in accord with the remedial purposes of the FELA.

In enacting FELA, it was Congress' intention that it be a broad, remedial statute and, as such, should be given a liberal construction by courts. *Ackley v. Chicago and North Western Transp. Co.*, 820 F.2d 263, 266 (8th Cir.1987) (*citing Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1029, 93 L.Ed. 1282 (1949)). *See Gardner v. CSX Transportation, Inc.*, 201 W.Va. [490, 498], 498 S.E.2d 473, 481 (1997).

*McGraw v. Norfolk & Western Ry. Co.*, 201 W.Va. 675, 679, 500 S.E.2d 300, 304.[22] Such a heightened standard would also afford employees greater protection of their FELA rights. In this regard, one court has opined that

> [a] reading of 45 U.S.C. § 55 indicates that Congress intended to remove the ability of employees to sell off their FELA rights in exchange for short term gains as well as the ability of employers to pressure or defraud their employees into signing away those same rights.

*Brophy v. Cincinnati, New Orleans, & Texas Pac. Ry. Co.*, 855 F.Supp. 213, 216 (S.D.Ohio 1994) (footnote omitted). Accordingly, we hold that, where a release has not been executed as part of a specific settlement of a claim brought under the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.*, but instead was executed in connection with a voluntary separation program, section 5 of the Act, which is codified at 45 U.S.C. § 55 (1908) (2000 ed.), precludes an employer from claiming that the release is a bar to liability under the Act. To be valid under section 5 of the Federal Employer's Liability Act, a re-

---

**22.** For a brief summary of the history of the FELA, see *Wicker v. Consolidated Rail Corp.*, 142

F.3d 690, 696 (1998).

lease executed in connection with a voluntary separation program must reflect a bargained-for settlement of a known claim for a specific injury.[23]

 Turning to the instant case, in granting summary judgment to Norfolk Southern, the circuit court mistakenly placed this case within the *Wicker* category. However, an employee, such as Mr. Ratliff, who has executed a general release in the context of participating in a voluntary separation program, plainly falls within the *Babbitt* category of cases. Therefore, in order for the release executed by Mr. Ratliff to be a valid bar to his FELA cause of action, there must be evidence that the release was executed as part of a settlement for the specific injury now in controversy, namely mesothelioma. In the absence of such evidence, the release is void pursuant to § 5 of the FELA insofar as it pertains to Mr. Ratliff's mesothelioma claims.

### IV.

### CONCLUSION

Based upon the foregoing analysis, we find the circuit court erred in granting summary judgment in favor of Norfolk Western. Accordingly, the circuit court's order of September 19, 2007, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

Chief Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

### BENJAMIN, Chief Justice, concurring.

#### (Filed July 27, 2009)

While I concur in the result of the majority that summary judgment was not appropriate herein, I write separately because I believe the standard as set forth in the majority opinion for a settlement between an employee and an employer to be enforceable is far more rigid than that which is actually necessary under the Federal Employee Liability Act ("FELA"). I agree with my colleagues that a *general* release of future employment-related claims in connection with a voluntary separation program is precluded under FELA. 45 U.S.C. § 5. With respect to a *specific* release, however, I disagree with my colleagues, on what constitutes a proper controversy between an employee and an employer such that the parties may be found to be settling the type of specific claim which is permissible under FELA.

The majority opinion would require that a bargained-for settlement be for a "known claim of *a specific injury*." This standard is far too restrictive of the rights of employees and employers to engage in good faith and intelligent attempts through settlement to structure with predictability their future affairs. Furthermore, I find no precedent in law for so restrictive of a standard. It should not be the purpose of this Court to limit the freedom of parties to engage in bona fide, intelligent resolutions of controversies which may exist between them. Rather, this Court should instead encourage parties who wish to end their relationship with some measure of certainty and finality to do so, so long as it is done in a knowing and intelligent manner and it is done within whatever statutory constraints may apply. In that way, the bargained-for settlement may be said to be a "fair" bargain and thus meet the needs of a remedial system such as FELA while also ensuring the maximum freedom of parties to structure their personal affairs.

The standard which best accommodates a remedial program's need for protection of an employee with the public interest in one's freedom to knowingly structure present and future affairs is a standard which requires that the bargained-for settlement to be of a "known claim of *a specific risk of harm*" (rather than of a "known risk of a specific injury"). Both standards require a knowing appreciation of the controversy being settled. However, the majority's standard may be read to preclude the ability of an employee to

---

**23.** *But see Loyal v. Norfolk Southern Corp.,* 234 Ga.App. 698, 507 S.E.2d 499 (1998); *Gortney v.* *Norfolk & Western Ry. Co.,* 216 Mich.App. 535, 549 N.W.2d 612 (1996).

settle anything other than a specific manifestation of a present injury. This majority standard is a far more rigid reading of FELA than that required—one that I hope will hereafter be interpreted by this Court to also incorporate "risks of harm."

Adoption of a "known claim of a specific risk of harm" standard fully comports with the requirement that there be a specific "controversy" to be settled. *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, at 631, 68 S.Ct. 296, 298–99, 92 L.Ed. 242 (1948). Further, it more than adequately accommodates *both Babbitt v. Norfolk & Western Railway Co.*, 104 F.3d 89 (6th Cir.1997), and *Wicker v. Consolidated Rail Corp.*, 142 F.3d 690 (3d Cir.1998). Indeed, adoption of a "known claim of a specific risk of harm" standard fully embraces *Wicker's* acknowledgment that an employee and employer may want an immediate and permanent settlement to their relationship despite the lack of a present specific injury. 142 F.3d at 700–01. The key consideration for adequacy of a settlement under FELA is the comprehension by the parties to the settlement of the employee's future risk of harm and the employer's potential liability to the employee for such. One need not have a current manifestation of specific injury to be able to appreciate that one may have a future risk of harm from something which happened presently or in the past. One should therefore not be limited to acting only if and when the worst actually comes to pass.