*220 OPINION OF THE COURT
Joseph D. Mintz, J.
Defendant moves for summary judgment dismissing the complaint in this action based upon the Federal Employers’ Liability Act (45 USC § 51 et seq. [FELA]). Defendant’s motion is based upon a release signed by the plaintiff in 1996, in settlement of a claim by plaintiff based upon exposure to asbestos in his employment with defendant. This action is also based upon exposure to asbestos; plaintiff claims to have contracted bladder cancer due to that exposure.
The parties agree that FELA, as interpreted by the Supreme Court, prohibits general releases. The question at issue is whether the specific language of the release signed by plaintiff in 1996 covers the claim upon which this action is based. In order to make that determination, the court must first decide whether the language of the release should be held to the standard of injuries that the plaintiff had sustained, as articulated by the Sixth Circuit in Babbitt v Norfolk & W. Ry. Co. (104 F3d 89 [6th Cir 1997]), or any known risk upon which a claim could be based, as articulated by the Third Circuit in Wicker v Consolidated Rail Corp. (142 F3d 690 [3d Cir 1998]). Defendant argues that Wicker should apply, and concedes that under the test of Babbitt the release cannot prevent the claim upon which this action is based. Plaintiff argues that Babbitt should apply, but claims that even under the Wicker test, plaintiffs bladder cancer was not a “known risk.”
In Babbitt the United States Court of Appeals for the Sixth Circuit determined whether the release language in an early retirement agreement prevented a FELA action based upon the plaintiffs claim of hearing loss. The agreement sought to release the railroad defendant from “all claims, known and unknown, for which the company may ever be held liable” (at 91). The court determined that such a release was contrary to 45 USC § 55, which provides that any contract attempting to exempt a carrier from FELA liability is void, and reversed the lower court’s finding of summary judgment. In the decision, the court reviewed cases in which there is a release which accompanies a compromise of a claim of liability for a specific injury, and found that such releases do not contravene section 55. As a consequence, the court remanded the case to the district court to determine whether the release was intended to resolve a claim of liability “for the specific injuries in controversy ” (at 93).
In Wicker, the United States Court of Appeals for the Third Circuit considered the enforceability of a release that had been *221 part of a compromise between the railroad defendant and each of five plaintiffs in subsequent claims by the plaintiffs. The court reviewed the cases permitting and prohibiting releases under section 55, including Babbitt. The court distinguished Babbitt because its decision was based in part on a release that was not the product of negotiations settling a claim. However, the court did consider the test in Babbitt, and noted the advantage of predictability that such a bright line test would provide. It rejected the test, however, noting that the parties to a claim might specifically comprehend future risks and potential liabilities and make them subject to the settlement. Instead, the court allowed a release that covered a “known risk” even if the specific injury were not known.
To date, neither the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, nor any of the Appellate Divisions have addressed the issue of the proper standard to be applied in judging whether a particular release may be enforced against a claim under the FELA. In two unwritten decisions in New York Supreme Court in Erie County[1] the court adopted the Wicker standard. In a third unwritten decision[2] the court found the release to be void under 45 USC § 55, but did not adopt any specific standard under either Wicker or Babbitt. In the face of the absence of any reported or unreported written decision, this matter is one of first impression in this court.
As the court in Wicker noted (142 F3d at 700), the evaluation of the parties’ intent at the time of the execution of the release is an essential element in the inquiry of its enforceability. Any intention to prevent a claim unrelated to the one compromised would be void under section 55. However, courts have specifically allowed a release to compromise a specific claim or claims, and to prevent reassertion of that claim at a later date. The adoption of the Babbitt approach requires that the parties know of the specific injury; the adoption of the Wicker approach requires that the parties know of the specific risk. While this court agrees that the Babbitt approach’s bright line test may be easier to apply to a particular claim, its adoption would prevent any compromise to be made for such damage items as “fear of cancer” or “risk of permanency” despite the fact that the parties may intend for the compromise to specifically cover those *222 items of damage. To adopt the Babbitt approach requires an unrealistic view on how parties compromise claims. And while it may appear that the approach may enable an easier resolution of the manner in which a release is enforced, the result may be either a more complicated inquiry into the exact nature and scope of the injury compromised, or a chilling effect on the resolution by compromise of any claims. This is particularly true with respect to claims based upon exposure to asbestos, where effects of the exposure may be latent for a considerable period of time. If a new claim were permitted for each and every new manifestation of the asbestos exposure, regardless of the extent of the parties’ awareness of such risks, there would be no incentive on the part of the railroad defendant to ever compromise such claims. This result would not further the public policy of encouraging settlement of claims.
For these reasons, the Wicker approach is the better approach. It permits the enforcement of the release for not only the specific injuries already manifested at the time of its execution, but also any risks of future injury which the parties specifically contemplated in its execution, so long as those risks are properly within the ambit of the claim compromised. This approach provides a realistic view of compromises and releases, while staying true to the prohibition on blanket relinquishments of rights under FELA.
The Third Circuit court applied this standard in Wicker to five different releases in determining their enforceability. The application of the standard to the five releases is instructive in determining whether the release in this case prevents the claim at issue. In the first release (Wicker), the plaintiff believed that the release applied only to asbestos exposure and his new claim was for exposure to trichloroethylene and trichloroethane. In the second release (Weaver), the plaintiff believed that the release applied only to his back injury and the new claim was for exposure to various chemicals. In the third release (Kleiner), the plaintiff believed that the release applied only to asbestos exposure and his new claim was for exposure to other chemicals. In the fourth release (McKee), the plaintiff believed that the release applied only to his back and his new claim was for exposure to toxic chemicals. In the fifth release (Kaltenbrunner), the plaintiff believed that the release was for back injury and his new claim was for exposure to toxic chemicals. With respect to all five releases, the court determined that each release was unenforceable. The court determined that the language in *223 the release which purported to cover all claims concerning the exposure to any substance whatsoever was mere boilerplate, not the subject of any negotiation to which the plaintiff was party. Furthermore, the court was satisfied that there was no evidence, despite the existence of some symptoms, that the plaintiffs thought they were compromising any claims based upon exposure to various chemicals.
The release in this case and its enforceability to the instant claim is more problematic. The release is the product of a compromise between the parties, each represented by counsel, regarding a claim for exposure to asbestos. The instant claim is based upon the same exposure to asbestos. Plaintiff claims, even under the Wicker standard, that the risk of bladder cancer was not contemplated by the initial release and that it should not be enforced, in that the plaintiff intended in executing the release to compromise only his claim regarding lung and related ailments. While lung cancer and other lung ailments are the most common injuries caused by exposure to asbestos, the risks of asbestos exposure are known to be greater than simply lung ailments. The language of the release includes all cancers and fear of cancer in addition to certain lung ailments. While plaintiff may not have specifically known of the bladder cancer which he later contracted at the time of the compromise, he had to understand that he was compromising his claim based upon asbestos exposure and any future claim based upon that exposure and that such claim would include cancers and other injuries which were specifically based upon asbestos exposure. In negotiating the settlement with plaintiff, defendant had a reasonable expectation of finality with respect to the specific claim of asbestos exposure, and the settlement paid was likely to have been based upon that expectation. While any other claim (e.g., exposure to other substances) should not be precluded by the release, it is appropriate to enforce the release in this action where the claim arises out of precisely the same asbestos exposure that was compromised in the earlier settlement and release.
For these reasons, defendant’s motion for summary judgment is granted and the complaint dismissed.

. Donius v Consolidated Rail Corp., Sup Ct, Erie County, 2005, Marshall, J.; Crosson v Consolidated Rail Corp., Sup Ct, Erie County, 2006, Makowski, J.

. Smutek v Consolidated Rail Corp., Sup Ct, Erie County, 2005, Sconiers, J.