IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 18, 2014 Session

# DELORES BLACKMON, Individually and as surviving spouse and personal representative of DOLPHUS H. BLACKMON v. ILLINOIS CENTRAL RAILROAD COMPANY, Individually and successor-in-interest to Gulf, Mobile & Ohio Railroad Company, and Illinois Central Gulf Railroad Company, ET AL.

Direct Appeal from the Circuit Court for Madison County
No. C-08-280      Roy B. Morgan, Jr., Judge

No. W2013-01605-COA-R3-CV- Filed May 16, 2014

Plaintiff filed this lawsuit pursuant to the Federal Employers' Liability Act, alleging that her husband was exposed to toxic substances, including asbestos and other chemicals, during his employment with the defendant railroad and that such exposure led to his death from mesothelioma. The railroad filed a motion for summary judgment, arguing that the deceased employee had executed a release, when he settled previous litigation with the railroad, which served to bar the current litigation. The trial court granted the railroad's motion for summary judgment based on the release. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jimmy F. Rodgers, Jr., Chattanooga, Tennessee; John E. ("Rett") Guerry, III, Mt. Pleasant, South Carolina; Joe H. Byrd, Jr., Jackson, Tennessee, for the appellants, Delores Blackmon, Individually and as surviving spouse and personal representative of Dolphus H. Blackmon

Thomas R. Peters, Michael C. Hermann, Belleville, Illinois; Brooks E. Kostakis, Memphis, Tennessee, for the appellee, Illinois Central Railroad Company

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Dolphus H. Blackmon was employed as a machinist with Illinois Central Railroad Company and its predecessors from 1945 until he retired in 1989. Mr. Blackmon died in May 2008, allegedly as a result of pleural mesothelioma. In September 2008, the instant case was filed by Plaintiff Delores Blackmon, acting individually and as surviving spouse and personal representative of Dolphus H. Blackmon, against Illinois Central Railroad Company ("Illinois Central") and numerous other defendants. Relevant to this appeal, the complaint alleged that Mr. Blackmon was exposed to "toxic substances, including but not limited to asbestos, asbestos dust, asbestos-containing products, diesel exhaust or chemicals" during his employment with Illinois Central between 1945 and 1989 and that such exposure allegedly caused him to develop mesothelioma. The complaint alleged that Illinois Central was liable for the wrongful death of Mr. Blackmon pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51.[1]

Illinois Central filed an answer claiming, among other things, that Plaintiff's claims were barred by a release that Mr. Blackmon had executed in connection with the settlement of another FELA lawsuit Mr. Blackmon had filed against Illinois Central several years earlier. In the previous lawsuit, Mr. Blackmon had alleged that he suffered from a different disease, asbestosis, as a result of his exposure to asbestos during his employment with Illinois

---

[1] The FELA provides, in relevant part:

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "'The very title of the law, Federal Employers' Liability Act, is confusingly overbroad.'" *Jordan v. Burlington Northern Santa Fe R.R. Co.*, No. W2007-00436-COA-R3-CV, 2009 WL 112561, at *5 n.3 (Tenn. Ct. App. Jan. 15, 2009) (quoting *CSX Transp., Inc. v. Miller*, 159 Md. App. 123, 858 A.2d 1025, 1029 (Md. Ct. Spec. App. 2004)). It is not a "federal employer" law but a federal law specifically pertaining to railroads as employers. *Id.* "'The only possible defendants are railroads engaged in interstate commerce. The only possible plaintiffs are the employees of those railroads who are injured on the job.'" *Id.* (quoting *Miller*, 858 A.2d at 1029).

Central.[2] Mr. Blackmon settled the asbestosis lawsuit with Illinois Central in October 2002 by executing a "Release" in exchange for a lump sum payment of $28,000. The Release provided, in part, that Mr. Blackmon released Illinois Central from "any and all claims arising out of Dolphus Blackmon's employment." Among other things, the Release specifically stated that Illinois Central was released "from any and all claims, losses, damages, injuries, conditions or diseases, including, but not limited to . . . mesothelioma, or any other disease allegedly resulting in any manner from the employment of Dolphus Blackmon or any other medical condition allegedly related to the employment of Dolphus Blackmon." It stated that Illinois Central was released from "any and all claims, losses, damages and injuries directly or indirectly caused by or resulting from any alleged exposure to asbestos, . . . diesel fumes, . . . and any and all other fumes, dusts, mists, gases, and vapors from any material, chemical, or agent which allegedly occurred while Dolphus Blackmon was in the employment of the parties released." The Release was signed by Mr. Blackmon and by his attorney.

Illinois Central filed a motion for summary judgment based upon the Release. Illinois Central asserted that the Release unambiguously released any claims arising out of Mr. Blackmon's exposure to asbestos or chemicals, including those for mesothelioma. Illinois Central also contended that the Release was valid and enforceable under the FELA. Plaintiff filed a response, arguing that the terms of the Release did not encompass the claims in the present case and that the Release was void and unenforceable pursuant to the FELA.

Following a hearing in April 2009, the trial court entered an order granting summary judgment to Illinois Central, finding the Release valid and enforceable as a bar to Plaintiff's claims. Plaintiff's claims against other defendants remained pending but were ultimately

---

[2] The Tennessee Supreme Court recognized that asbestosis and mesothelioma are separate and distinct diseases in *Potts v. Celotex Corp.*, 796 S.W.2d 678, 679 (Tenn. 1990), and the Court described the two diseases as follows:

> According to the medical evidence in this case, asbestosis and mesothelioma are two independent, distinct and separate diseases, related only by the fact that each is caused by exposure to asbestos fibers. Asbestosis is a pneumoconiosis, causing a fibrous condition or scarring of the lungs. Mesothelioma is an extremely virulent cancer of the epithelium, the thin membrane that lines the lungs, chest and abdominal cavities. A person may have asbestosis without ever contracting mesothelioma and, conversely, may contract mesothelioma without ever having had asbestosis. In the words of Dr. Bedwell, one of petitioner's medical experts, "one disease does not arise out of the other." A study in the New England Journal of Medicine estimates that only 15% of asbestosis sufferers later contract pleural mesothelioma and only 12% contract peritoneal mesothelioma. Selikoff, Churg & Hammond, *Relation between Exposure to Asbestos and Mesothelioma*, 272 New Eng. J. Med. 560, 562 (1965).

resolved by an order of voluntary dismissal in June 2013. Plaintiff then filed a notice of appeal, challenging the trial court's April 2009 order granting summary judgment to Illinois Central.

## II. ISSUES PRESENTED

On appeal, Plaintiff presents the following issues, slightly restated, for review:

1. Whether the trial court erred in construing the language of the Release as applying to future claims;

2. Whether the trial court erred by determining the validity of the Release under the FELA using the approach taken by the United States Court of Appeals for the Third Circuit in *Wicker v. Consolidated Rail Corp.*, 142 F.3d 690 (3rd Cir. 1998), in light of the United States Supreme Court's decision in *Norfolk & Western Railway v. Ayers*, 538 U.S. 135 (2003); and

3. Whether the trial court erred in failing to heed the Third Circuit's caution in *Wicker* against boilerplate language in release agreements.

For the following reasons, we reverse the trial court's order granting summary judgment to Illinois Central, and we remand for further proceedings.

## III. STANDARD OF REVIEW

The FELA provides for concurrent jurisdiction of the state and federal courts over FELA claims. *Jordan*, 2009 WL 112561, at *6 (citing *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165-66 (2007)); *Jennings v. Ill. Cent. R.R. Co.*, 993 S.W.2d 66, 70 (Tenn. Ct. App. 1998). Although, substantively, FELA actions are governed by federal law, when FELA cases are tried in state courts, the applicable state rules generally govern procedural matters. *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn. 2009); *May v. Illinois Central R.R. Co.*, 361 S.W.3d 511, 518 n.9 (Tenn. Ct. App. 2011); *Jennings*, 993 S.W.2d at 70. Accordingly, we will consider Illinois Central's motion for summary judgment under the familiar standards of Tennessee Rule of Civil Procedure 56. *See Mills*, 300 S.W.3d at 631 (applying Tennessee summary judgment standard in a FELA case); *Jennings*, 993 S.W.2d at 70 (same).

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin*, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). If the moving party does make a properly supported motion, the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* at 84 (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd*, 847 S.W.2d at 215). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Id.* However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

As noted above, the validity of a release under FELA raises a federal question to be determined by federal law. *Dice v. Akron, C. & Y. R.R. Co.*, 342 U.S. 359, 361 (1952); *Cheff v. BNSF Ry. Co.*, 358 Mont. 144, 150, 243 P.3d 1115, 1120 (Mont. 2010); *Ratliff v. Norfolk Southern Ry. Co.*, 224 W.Va. 13, 18, 680 S.E.2d 28, 33 (W. Va. 2009). The party attacking a FELA release bears the burden of establishing that the release is invalid. *Cheff*, 358 Mont. at 150, 243 P.3d at 1120; *Jaqua v. Canadian Nat. R.R., Inc.*, 274 Mich. App. 540, 547, 734 N.W.2d 228, 232 (Mich. Ct. App. 2007); *Loyal v. Norfolk Southern Corp.*, 234 Ga. App. 698, 703, 507 S.E.2d 499, 504 (Ga. Ct. App. 1998).

When enacting the FELA, Congress sought to prevent railroad employers from contracting out of FELA liability, as many railroads had insisted on contracts with their employees that discharged the company from liability for personal injuries. *Wicker*, 142 F.3d at 696 (citing H.R. Rep. 1386, 60th Cong. 1st Sess. 6 (1908)). To remedy this problem, Congress passed 45 U.S.C. § 55, which provides, in relevant part:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . .

In the case at bar, Plaintiff argues that the Release executed by Mr. Blackmon is unenforceable due to 45 U.S.C. § 55.

Despite the seemingly broad language of this section, the United States Supreme Court made clear long ago that releases are not *per se* invalid in FELA cases. In **Callen v. Pennsylvania Railroad Co.**, 332 U.S. 625, 626-27 (1948), a railroad employee had executed a release when he settled a claim against the railroad arising out of a back injury. In exchange for $250, the employee released all claims and demands against the railroad that the employee had at that time, or could have in the future, for injuries sustained in an alleged accident. *Id.* The employee later filed a FELA action based on the back injury he sustained in the accident. He acknowledged that he read and understood the release, knew what he was doing, and intended to waive any further claim. *Id.* at 627. However, he argued that the release violated the aforementioned FELA section, 45 U.S.C. § 55, because it enabled the railroad to "exempt" itself from liability. *Id.* at 630-31. The United States Supreme Court dismissed this argument without much discussion, simply stating:

> It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.

*Id.* at 631.

Because of the Supreme Court's statement in **Callen**, it is well established that "a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability." **Babbitt v. Norfolk & Western Ry. Co.**, 104 F.3d 89, 92 (6th Cir. 1997) (citing *Callen*, 332 U.S. 625). However, the proper application and reach of 45 U.S.C. § 55 remained unclear after **Callen**, and the United States Supreme Court has not had occasion since **Callen** "to explain how wide a net its ruling casts." **Wicker**, 142 F.3d at 698; *see also* **Ratliff**, 224 W. Va. at 19, 680 S.E.2d at 34 ("While the United States Supreme Court has, subsequent to *Callen*, addressed 45 U.S.C. § 55 in other contexts, it has not conclusively settled the manner in which this section may properly be applied.") Specifically, **Callen** did not explain what constitutes a permissible settlement or compromise of a FELA claim, and what constitutes an impermissible exemption from FELA liability; these unanswered questions have led to a

-6-

divergence in federal courts. ***Daniels v. Union Pacific R.R. Co.***, 388 Ill. App. 3d 850, 857, 904 N.E.2d 1003, 1009 (Ill. App. Ct. 2009). The particular release executed by the employee in ***Callen*** released the railroad from all claims and demands "which I have *or can or may have*" due to the accident. 332 U.S. at 626-27 (emphasis added). The employee's subsequent FELA action was based upon a back injury that was known at the time of the release, although the employee claimed he did not know the injury was permanent at the time of the release. ***Id.*** The Supreme Court rejected his argument that the release violated § 55. ***Id.*** at 630-31. However, courts considering FELA releases since ***Callen*** have disagreed as to whether a FELA release can *only* bar claims for injuries that were known at the time of the release, or whether a FELA release can also extend to claims for future injuries. *See **Illinois Cent. R.R. Co. v. Acuff***, 950 So.2d 947, 959 (Miss. 2006) ("When, if ever, a release may cover future claims is unclear from ***Callen***.") There are two main approaches, which were originally set forth by the Sixth Circuit in ***Babbitt v. Norfolk & Western Ry. Co.***, 104 F.3d 89 (6th Cir. 1997) and by the Third Circuit in ***Wicker v. Consolidated Rail Corp.***, 142 F.3d 690 (3rd Cir. 1998).[3]

In ***Babbitt***, 104 F.3d at 90-91, the plaintiff employees had executed general releases as part of the railroad's early retirement program, releasing the railroad from any claims "of any kind whatsoever, known or unknown," which the employees presently had or could have in the future, arising in any manner out of their employment. The employees later filed FELA claims for hearing loss, alleging that they were exposed to excessive noise levels during their employment. ***Id.*** The plaintiffs argued that the releases were unenforceable because they contravened 45 U.S.C. § 55. ***Id.*** at 91. The Sixth Circuit acknowledged that, according to ***Callen***, "a release executed as part of a settlement of disputed liability for work-related injuries can survive application of 45 U.S.C. § 55." ***Id.*** at 92. However, the Sixth Circuit emphasized that the ***Callen*** release "settled an actual controversy, *i.e.*, liability for the plaintiff's specific injuries." ***Id.*** The Court said, "it is clear that FELA is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee." ***Id.*** at 93. The Sixth Circuit ultimately reached the following conclusion:

> [W]here there exists a dispute between an employer and employee with respect

---

[3] We note that our decision is controlled by the decisions of the United States Supreme Court but not by the decisions of other courts of the federal system. ***Denver Area Meat Cutters & Employers Pension Plan v. Clayton***, 209 S.W.3d 584, 590-91 (Tenn. Ct. App. 2006). "[W]hile we may, in our discretion, follow the opinions of other federal courts, we are not bound to do so." ***Id.*** at 591; *see also **Leggett v. Duke Energy Corp.***, 308 S.W.3d 843, 871 (Tenn. 2010) ("because lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts"); ***Thompson v. State***, 958 S.W.2d 156, 174 (Tenn. Crim. App. 1997) ("The United States Supreme Court is the only federal court Tennessee courts are bound to follow.")

to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability. To be valid, a release must reflect a bargained-for settlement of a *known* claim for a *specific injury*, as contrasted with an attempt to extinguish potential *future* claims the employee might have arising from injuries known or unknown by him.

*Id.* (emphasis added and citation omitted). Because the district court did not analyze whether the release at issue in ***Babbitt*** was intended to resolve a claim of liability for the specific injuries in controversy, the Sixth Circuit Court of Appeals remanded for the district court to make that determination. *Id.* The Court cautioned, however, that the release could not bar the plaintiffs' hearing loss claims unless the release "was clearly executed as a settlement for their hearing loss injuries." *Id.*

The very next year, the Third Circuit Court of Appeals considered and declined to follow the ***Babbitt*** approach in ***Wicker v. Consolidated Rail Corp.***, 142 F.3d 690 (3rd Cir. 1998) *cert. denied*, 525 U.S. 1012 (Nov 16, 1998). In ***Wicker***, the plaintiff employees had executed releases in the past in connection with the settlement of claims for various injuries, such as asbestos-related injuries and back injuries. *Id.* at 692-93. The releases purported to release the railroad from liability for all injuries, past and future, relating to their employment. *Id.* at 693. The plaintiffs then brought suit under FELA, alleging that they were injured by exposure to hazardous and toxic substances during their employment. *Id.* at 694. The plaintiffs argued that the general releases they executed were void pursuant to 45 U.S.C. § 55. The plaintiffs contended that a FELA release could only compromise a claimed liability, and therefore, it could not release claims they did not know existed. *Id.* at 695. They claimed they were unaware of their present injuries at the time of the releases, and they offered supporting affidavits from the attorneys who represented them at the time.

At the outset, the ***Wicker*** Court recognized that, according to ***Callen***, releases are not per se invalid under FELA. *Id.* at 697. The Court said that although the ***Callen*** Court did not explain what will qualify as a permissible "compromise" of a claimed liability, "it did say that parties may settle '[w]here controversies exist as to whether there is liability, and if so for how much.' The explicit requirement is that a controversy must exist." *Id.*

The ***Wicker*** Court noted that lower courts addressing general releases since ***Callen*** had reached varying results – some courts had held that general releases of all claims did not contravene the purposes of FELA and could bar a subsequent claim, while others had refused to enforce them. *Id.* at 699. The Court acknowledged the Sixth Circuit's recent holding in

***Babbitt***, which it said "appear[ed] to establish a broad, legal rule prohibiting the use of general releases in cases such as this." ***Id.*** However, the Court noted that the releases in ***Babbitt*** were executed as part of an early retirement program, offered to all employees on a take-it-or-leave-it basis, rather than the result of a compromise of claims. ***Id.*** "By contrast," the Court said, "the releases at issue here were all negotiated as part of the settlement of an existing claim—each was the result of arms-length bargaining between the plaintiff, his counsel, and the defendant railroad." ***Id.*** "To be valid under FELA," the Court continued, "a release must at least have been executed as part of a negotiation settling a dispute between the employee and the employer." ***Id.*** at 700. The Court also explained that FELA cases are inherently fact-bound, and "[t]he evaluation of the parties' intent at the time the agreement was made is an essential element of this inquiry." ***Id.*** "[T]he 'meaning to be given to the words of a contract must be the one that carries the intent of the parties as determined by the circumstances under which the contract was made.'" ***Id.*** (quoting *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 263 (6th Cir. 1988)).

After extensively reviewing additional relevant caselaw, the ***Wicker*** Court concluded, "The question remains whether there is a way to protect employees' statutory rights while also upholding the parties' right to settle claims by contract." ***Id.*** The Court explained its decision as follows:

> A bright line rule like the one set forth in ***Babbitt***, limiting the release to those injuries known to the employee at the time the release is executed, has the benefit of predictability. Under ***Babbitt***, "a release must reflect a bargained-for-settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." 104 F.3d at 93. . . .

> Yet, it is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages related to known risks even if there is no present manifestation of injury.

> The question still remains whether a rule allowing parties to release claims related to known risks rather than known injuries reflects FELA's remedial goals. We believe it does. We hold that a release does not violate §

5[4] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute "controversies," and may not be waived under § 5 of FELA. See *Callen*, 332 U.S. at 631, 68 S.Ct. at 298–99. For this reason, a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure—allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate § 5 of FELA.

To the extent that a release chronicles the scope and duration of the known risks, it would supply strong evidence in support of the release defense. But we are wary of making the validity of the release turn on the writing alone because of the ease in writing detailed boiler plate agreements; draft releases might well include an extensive catalog of every chemical and hazard known to railroad employment. For this reason, we think the written release should not be conclusive. We recognize that what is involved is a fact-intensive process, but trial courts are competent to make these kinds of determinations. While the elusiveness of any such determination might counsel in favor of a bright-line rule such as the Sixth Circuit adopted in *Babbitt*, we decline to adopt one here.

Instead, we conclude that a release may be strong, but not conclusive, evidence of the parties' intent. Where a specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she intended to release liability for it. Furthermore, where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent. We recognize that this is a different (and more difficult) standard for railroad employers than is typical in non-FELA situations, but given the Supreme Court's pro-employee construction of the FELA, [citations omitted], we adopt it.

*Id.* at 700-701.

Applying these standards to the releases before it, the *Wicker* Court found each of the releases invalid. Even though the releases were executed in the context of settling previous

---

[4] "45 U.S.C. § 55 (1908) (2000 ed.) is also referred to as § 5 of the FELA." *Ratliff*, 224 W. Va. at 15 n.2, 680 S.E.2d at 30 n.2.

-10-

claims, the Court found the issue of the parties' intent more problematic. *Id.* at 701. The language of the releases appeared to recite a standard waiver of liability, which did not demonstrate that the parties understood, let alone addressed or discussed, the scope of the claims being waived. There was no indication that the parties negotiated any part of the releases other than the amount of the settlement. Some of the releases were quite detailed blanket releases that attempted to cover all potential liabilities, reciting a series of generic hazards to which the employees might have been exposed, rather than specific risks the employees faced during the course of their employment. For example, some of the releases referenced injuries from "dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind." *Id.* at 693. However, the releases did not demonstrate the employees knew of the actual risks to which they were exposed and from which the employer was being released. *Id.* at 701. The plaintiffs had testified that they were *not* aware of the risks associated with the chemicals used at their employer's facility. *Id.* at 702. In sum, the Court found no evidence that the plaintiffs, "despite being represented by counsel," were aware of the potential health risks to which they had been exposed, and therefore, the Court found that they could not have properly waived their claims for chemical exposure. Basically, the releases violated § 5 because they purported to settle all claims regardless of whether the parties knew of the potential risks. *Id.*

In summary, the **Babbitt** and **Wicker** approaches appear to diverge on the issue of whether FELA permits a release of only *known injuries or conditions* that exist at the time of the release, as the Court held in **Babbitt**, 104 F.3d at 93, or whether FELA also permits the release of *known risks of future injuries or conditions*, as the Court held in **Wicker**, 142 F.3d 700-701. "The adoption of the **Babbitt** approach requires that the parties know of the specific injury; the adoption of the **Wicker** approach requires that the parties know of the specific risk." **Oliverio v. Consolidated Rail Corp.**, 14 Misc.3d 219, 221, 822 N.Y.S.2d 699, 701 (N.Y. Sup. Ct. 2006). Under **Wicker**, "a valid release may encompass an injury that is unknown at the time of its execution, if the *possibility* of such injury is known." **Loyal**, 234 Ga. App. at 701, 507 S.E.2d at 502.

Many courts that have considered the validity of FELA releases in recent years have adopted the **Wicker** approach. *See, e.g.*, **Sea–Land Serv., Inc. v. Sellan**, 231 F.3d 848, 852 (11th Cir. 2000); **Loyal v. Norfolk Southern Corp.**, 234 Ga. App. 698, 701 n.4, 507 S.E.2d 499, 502 n.4 (Ga. Ct. App. 1998) (adopting **Wicker** and stating, "Only the Sixth Circuit has adopted a bright line rule that a release may be valid *only* with regard to injuries that are known at the time the release is executed. The majority of courts have not so found.") (citations omitted); **Jaqua v. Canadian Nat. R.R., Inc.**, 274 Mich. App. 540, 542, 734 N.W.2d 228, 229 (Mich. Ct. App. 2007) (adopting the **Wicker** approach as the "better reasoned" approach); **Illinois Cent. R.R. Co. v. Acuff**, 950 So.2d 947, 960 (Miss. 2006) ("we find the Third Circuit's approach allowing the release of future claims based on specific risks

known to the parties to be appropriate."); ***Sinclair v. Burlington Northern & Santa Fe Ry. Co.***, 347 Mont. 395, 413, 200 P.3d 46, 59 (Mont. 2008) ("The ***Wicker*** approach to the scope and validity of FELA releases in light of § 5 of FELA has been adopted approvingly by several courts. . . . We join these courts in adopting the standard set forth in ***Wicker***[.]"); ***Oliverio v. Consolidated Rail Corp.***, 14 Misc.3d 219, 222, 822 N.Y.S.2d 699, 702 (N.Y. Sup. Ct. 2006) ("the ***Wicker*** approach is the better approach").[5]

Other courts have followed ***Babbitt***. *See, e.g.*, ***Choate v. National R.R. Passenger Corp.***, No. 05-74583, 2007 WL 2868027, at *5-6 (E.D. Mich. 2007); ***Knoth v. Illinois Cent. R.R. Co.***, No. 2005-CA-001882-MR, 2006 WL 1510782, at *1 (Ky. Ct. App. 2006) (applying ***Babbitt*** without mentioning ***Wicker***)[6]; ***Anderson v. A.C. & S., Inc.***, 154 Ohio App.3d 393, 402, 797 N.E.2d 537, 544 (Ohio Ct. App. 2003) (finding the appellees' reliance on ***Wicker*** "misplaced," stating, "[t]his is not the rule in the Sixth Circuit").

Still other courts have found it unnecessary to formally adopt one approach or the other because the releases before the courts were invalid under either approach.[7] *See, e.g.*, ***Presley v. Union Pacific R.R. Co.***, No. CIV-10-252-SPS, 2012 WL 4120906, at *3 (E.D. Okla. 2012); ***Aurand v. Norfolk Southern Ry Co.***, No. 3:08-CV-398 PPS, 2010 WL 1972786, at *3 (N.D. Ind. 2010) (finding summary judgment inappropriate under either approach); ***Daniels v. Union Pacific R. Co.***, 388 Ill. App. 3d 850, 851-852, 904 N.E.2d 1003,

---

[5]  We note that in the State of New York, the court of last resort is called the Court of Appeals, and the Supreme Court is a trial level court.  ***In re Shannel P.***, No. D-21117/13, 42 Misc.3d 1222(A), 2014 WL 521463, at *2 n.2 (N.Y. Fam. Ct. Feb. 10, 2014).

[6]  In a subsequent case, the Kentucky Court of Appeals acknowledged ***Knoth*** but stated that "Kentucky Courts have not definitively ruled on this issue in a published opinion."  ***CSX Transp., Inc. v. Hamilton***, Nos. 2011-CA-001401-MR, 2011-CA-001422-MR, 2012 WL 3137399, at *3 (Ky. Ct. App. Aug. 3, 2012).  The Court went on to resolve the case on other grounds, finding it unnecessary to reach the issue.

[7]  The Supreme Court of West Virginia recently concluded that it is not necessary to select between the two approaches because, in the Court's view, "the ***Babbitt*** and ***Wicker*** cases actually set out different standards to be applied in different circumstances."  ***Ratliff v. Norfolk Southern Ry. Co.***, 224 W. Va. 13, 23, 680 S.E.2d 28, 38 (W. Va. 2009).  The West Virginia Court opined that the "distinction lies with the posture of the employee in executing a release," with ***Wicker*** applying to cases where an employee executes a release in connection with the negotiation of a FELA claim, and ***Babbitt*** applying when the employee was not negotiating the settlement of a claim but executed a general release in the context of participating in a voluntary separation program.  *Id.*; *see also* ***Wells v. Union Pacific R.R. Co.***, No. 9:07cv27, 2008 WL 4500735, at *4 (E.D. Tex. 2008) (distinguishing ***Babbitt*** because it involved a release that was executed as part of an early retirement program, and ***Wells*** involved a release executed in connection with a previous claim for an injury); ***Wicker***, 142 F.3d at 700 (noting that the Babbitt holding "was based in part on the fact that the releases formed part of a voluntary separation program, and were not the product of negotiations settling a claim").

1005 (Ill. App. Ct. 2009); *Illinois Cent. R.R. Co. v. McDaniel*, 951 So.2d 523, 530-32 (Miss. 2006); *Wolf v. Consolidated Rail Corp.*, 840 A.2d 1004, 1007-1008 (Pa. Super. Ct. 2003).

Having considered these approaches, we now turn to the language of the Release executed by Mr. Blackmon in connection with the asbestosis case, and the parties' arguments in the present case. The Release provided, in part:

> FOR AND IN CONSIDERATION of the sum of TWENTY-EIGHT THOUSAND DOLLARS AND 00/100 ($28,000.00), the receipt of which is hereby acknowledged, the undersigned, Dolphus Blackmon does hereby fully, completely and forever release, discharge and acquit ILLINOIS CENTRAL RAILROAD COMPANY . . . and any and all other persons and entities, of and from any and all claims, losses, damages and injuries directly or indirectly caused by or resulting from any alleged exposure to asbestos, coal, coal dust, welding fumes, brass fumes, diesel fumes, dust, paint vapors, fuel fumes, methyl bromide, ammonia gas, sand, silica, and any and all other fumes, dusts, mists, gases, and vapors from any material, chemical, or agent which allegedly occurred while Dolphus Blackmon was in the employment of the parties released.
> IT IS THE INTENTION OF THE UNDERSIGNED to release, discharge and acquit the parties released of and from any liability for any claim, loss, and damage and injury to Dolphus Blackmon directly or indirectly caused by or resulting from any exposures to Dolphus Blackmon while in the employ of the parties released, whether founded on any federal, state, or municipal statute, regulation, or ordinance or founded on the common law . . . . It is understood and agreed that this Release is intended by the parties to release any and all claims for any injuries, conditions or diseases, including mesothelioma, cancer, or other malignancies, which Dolphus Blackmon has against the parties released, including but not limited to any and all claims allegedly caused by or resulting from any alleged exposure of Dolphus Blackmon to any of the above-described materials, chemicals or agents which might have occurred at any time while Dolphus Blackmon was in the employment or environment of the parties released.
> IT IS UNDERSTOOD AND AGREED that it is the intention of the parties that this Release releases ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, and all parties released of and from any and all claims, losses, damages, injuries, conditions or diseases, including, but not limited to, pneumoconiosis, cancer, mesothelioma, or any other disease allegedly resulting in any manner from the employment of Dolphus Blackmon or any other medical condition allegedly related to the employment of Dolphus

Blackmon with the parties released.

. . . .

IT IS FURTHER UNDERSTOOD AND AGREED that the undersigned acknowledges that this settlement represents the full and complete accord and satisfaction of any and all claims arising out of Dolphus Blackmon's employment with the parties released and that he acknowledges, by this Release, that he has received everything he expects to receive as compensation from the parties released for any conditions arising while he was in the employment and environment of the parties released, and acknowledges that he reserves no rights against any such party, either known or unknown, for any other or additional claims allegedly arising while he was in the employment or environment of the parties released.

IT IS FURTHER UNDERSTOOD AND AGREED that by executing this Release the undersigned is taking that what he was told by any doctor or other person with regard to his injuries or conditions or diseases and the future manifestation thereof may have been wrong and the doctor or other person may have made mistakes with respect to the injuries or conditions involved. Even if that should be the case, it is the intention of the undersigned that this Release is binding and effective.

IT IS FURTHER UNDERSTOOD AND AGREED that this settlement is a compromise of a disputed claim and is not to be construed as an admission of liability on the part of the parties released, which expressly deny liability and the denial of liability has been taken into consideration in connection with the negotiation for the amount of consideration paid for this Release.

. . . .

Plaintiff's first argument on appeal is that "[t]he plain language of the release demonstrates that the release was not intended to release future claims." Plaintiff points to specific, isolated terms used in the Release, such as "claims, losses, damages, and injuries," whether "founded" on state or federal law, which Mr. Blackmon "has" against the parties released, and he argues that these terms, "all present tense or past tense usages," demonstrate that the Release only governed claims for injuries existing at the time of the release. We disagree. "[T]he 'meaning to be given to the words of a contract must be the one that carries the intent of the parties as determined by the circumstances under which the contract was made.'" **Wicker**, 142 F.3d at 700 (quoting *Forry*, 837 F.2d at 263).[8] The Release also stated:

[8] "Since this action was commenced under the provisions of the Federal Employers' Liability Act, substantive federal law controls with regard to the substantive interpretation of releases." **Blaylock v. Toledo, P. & W. R. Co.**, 43 Ill.App.3d 35, 37, 356 N.E.2d 639, 641, 1 Ill.Dec. 451, 453 (Ill. App. Ct. 1976) (continued...)

IT IS FURTHER UNDERSTOOD AND AGREED that the undersigned acknowledges that this settlement represents the full and complete accord and satisfaction of any and all claims arising out of Dolphus Blackmon's employment with the parties released and that he acknowledges, by this Release, that he has received everything he expects to receive as compensation from the parties released for any conditions arising while he was in the employment and environment of the parties released, and acknowledges that he reserves no rights against any such party, either known or unknown, for *any other or additional claims* allegedly arising while he was in the employment or environment of the parties released.

(Emphasis added). In addition, the fact that the Release included many specific conditions that were not present at the time suggests that the Release was not intended to cover only Mr. Blackmon's existing injury – asbestosis. We reject Plaintiff's contention that the language of the Release does not encompass future claims in any event.

Plaintiff's next argument involves the trial court's approach to considering the validity of a FELA release. The trial court applied the **Wicker** approach, and Plaintiff does not appear to challenge the trial court's decision to apply **Wicker** rather than **Babbitt**. In fact, Plaintiff's brief states, "The Trial Court correctly followed **Wicker**'s focus on whether there was an 'existing controversy' in order to determine if the release signed by Mr. Blackmon for his prior asbestosis claim precluded a later claim for mesothelioma." However, Plaintiff goes on to argue, "Where the Trial Court erred in relying on **Wicker** for the 'known risk' approach is found in the Trial Court's failure to recognize the effect that the U.S. Supreme Court opinion in **Norfolk & Western RY v. Ayers**, 538 US 135 (2003), had on issues related to the analysis of FELA releases under Section 55." Plaintiff asserts that the **Ayers** opinion "had the effect of refining the definition of what is a controversy under the FELA."

We are not persuaded by Plaintiff's argument that **Ayers** has redefined the analysis applicable to determine the validity of FELA releases or otherwise eliminated the ability of courts to follow the **Wicker** approach. The issue in **Ayers**, as stated by the Supreme Court, concerned "the damages recoverable by a railroad worker who suffers from the disease asbestosis: When the cause of that disease, in whole or in part, was exposure to asbestos while on the job, may the worker's recovery for his asbestosis-related 'pain and suffering' include damages for fear of developing cancer?" **Ayers**, 538 U.S. at 140. The Court noted its previous holding that emotional distress damages may not be recovered under the FELA by *disease-free* asbestos-exposed workers; although workers who do suffer from a disease

---

[8](...continued)
(citing *Callen,* 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242; *Dice,* 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398).

may recover for related negligently caused emotional distress. *Id.* (citing *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 117 S. Ct. 2113, 138 L.Ed.2d 560 (1997)). Accordingly, the *Ayers* Court held that "mental anguish damages resulting from the fear of developing cancer may be recovered under the FELA by a railroad worker suffering from the actionable injury asbestosis caused by work-related exposure to asbestos." *Id.* at 141.

Obviously, the *Ayers* case did not involve the issues before us. It did not involve a FELA release; nor did the opinion mention releases or 45 U.S.C. § 55. We find nothing to indicate that *Ayers* altered the definition of a "controversy," as that term was used in *Callen*, as the word "controversy" does not even appear in the *Ayers* opinion. Furthermore, the *Ayers* case was decided over a decade ago, and Plaintiff has not cited any cases that have interpreted *Ayers* as altering the analysis applicable to FELA releases. In contrast, several courts considering the validity of FELA releases, post-*Ayers*, have explicitly adopted the *Wicker* approach without any discussion of the *Ayers* opinion. *See, e.g.*, *Jaqua*, 274 Mich. App. at 542, 734 N.W.2d at 229; *Acuff*, 950 So.2d at 960 (Miss. 2006); *Sinclair*, 347 Mont. at 413, 200 P.3d at 59; *Oliverio*, 14 Misc.3d 219, 822 N.Y.S.2d at 702.

Basically, Plaintiff argues that *Ayers* made it clear that "asbestos exposure alone and any resultant risks of future cancer are not considered an injury sufficient to support a FELA action." As a result, Plaintiff argues that, because he could not have filed a FELA lawsuit for mesothelioma at the time of the execution of the release in his asbestosis case, then there was no "controversy" regarding mesothelioma that could be subject to the release. According to Plaintiff, "the U.S. Supreme Court has defined a 'controversy' as, in summary, a civil action based on more than an abstract injury." Plaintiff appears to argue, then, that a FELA release can only encompass claims that are (or could be) the subject of an existing civil action. *Callen* did not so hold, and neither did *Ayers*. The *Callen* Court simply said, "It is obvious that a release is not a device to exempt from liability but is a means of compromising *a claimed liability* and to that extent recognizing its *possibility*. Where *controversies* exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims *without litigation*." (Emphasis added).

Many courts that have adopted the *Wicker* approach have done so precisely because it allows the parties the freedom to settle claims for *potential* future injuries, not yet manifested, but of which the employee is at risk, and these courts have found that such an approach is not inconsistent with *Callen* or 45 U.S.C. § 55.[9] The Georgia Court of Appeals explained:

---

[9] It appears to us that Plaintiff is basically lobbying for the adoption of some version of the *Babbitt* approach – that a FELA release can only cover known injuries – without specifically framing her argument in those terms.

. . . Clearly, in an industry, such as the railroad industry, that has a number of known occupational risks and diseases, it is important to both the employer and employee to be able to settle potential claims regarding injuries or diseases prior to actual discovery.

The correctness of an analysis that turns on the known risk of injury, as opposed to a known actual injury, is completely supported by the Supreme Court's decision in *Callen* . . . . In so holding we avoid the set aside of successive settlements of known occupational diseases and repeated litigation when subsequent injuries from such occupational diseases manifest themselves over time.

*Loyal*, 234 Ga. App. at 701, 507 S.E.2d at 502. The Michigan Court of Appeals rejected the *Babbitt* approach for similar reasons:

*Babbitt* appears to hold that a release executed as part of a settlement for an accident or exposure cannot bar claims arising when the employee's condition worsens, or when an additional illness develops because of the same accident or exposure, even if the additional illness or worsened condition is explicitly contemplated by the release. However, nothing in *Callen*, *Duncan*, or *Schubert* suggests that an employee cannot settle his or her claims for injuries the parties know or have reason to know may worsen, spread, or lead to additional medical complications, and, therefore, we believe that *Babbitt's* holding is overly broad.

*Jaqua*, 274 Mich. App. at 552, 734 N.W.2d at 235. The Michigan Court adopted *Wicker* as the "better reasoned" approach because it "allows the employer and the employee the freedom to negotiate and settle claims, but protects the employee from releasing the employer for unknown liability that was not considered and resolved in an informed manner." *Id.* at 542, 734 N.W.2d at 229. Similarly, the Supreme Court of Erie County, New York reasoned:

To adopt the *Babbitt* approach requires an unrealistic view on how parties compromise claims. And while it may appear that the approach may enable an easier resolution of the manner in which a release is enforced, the result may be either more complicated inquiry into the exact nature and scope of the injury compromised, or a chilling effect on the resolution by compromise of any claims. This is particularly true with respect to claims based upon exposure to asbestos, where effects of the exposure may be latent for a considerable period of time. If a new claim were permitted for each and every new manifestation of the asbestos exposure, regardless of the extent of

the parties' awareness of such risks, there would be no incentive on the part of the railroad defendant to ever compromise such claims. This result would not further the public policy of encouraging settlement of claims.

For these reasons, the Wicker approach is the better approach. It permits the enforcement of the release for not only the specific injuries already manifested at the time of its execution, but also any risks of future injury which the parties specifically contemplated in its execution, so long as those risks are properly within the ambit of the claim compromised. This approach provides a realistic view of compromises and releases, while staying true to the prohibition on blanket relinquishments of rights under FELA.

*Oliverio*, 14 Misc.3d at 222, 822 N.Y.S.2d at 701-702; *see also Acuff*, 950 So.2d at 960 (Miss. 2006) (stating that *Babbitt* "unfairly restricts the ability of an employer and employee to knowingly and voluntarily settle both current and future claims, should the parties so desire.").

We agree with the reasoning of these courts and find that the trial court did not err in applying the *Wicker* approach to determine the validity of the release executed by Mr. Blackmon, even in light of the Supreme Court's decision in *Ayers*.

Finally, Plaintiff argues that the trial court erred in failing to "fully follow" the *Wicker* decision, and specifically, its caution against boilerplate language in release agreements. Plaintiff argues that the release signed by Mr. Blackmon is similar to the releases at issue in *Wicker*, which the Court found violated 45 U.S.C. § 55. She claims it was "boiler plate, general in nature, not designed to fully inform [Mr. Blackmon] and failed to comply with the specificity requirements . . . discussed in *Wicker*."

Resolution of this issue requires us to consider the procedural posture of this case and the evidence that has been presented at this stage of the proceedings. The party attacking a FELA release bears the burden of establishing that the release is invalid or void under 45 U.S.C. § 55. *Cheff*, 358 Mont. at 150, 243 P.3d at 1120 (citing *Callen*, 332 U.S. at 630, 68 S.Ct. at 298); *see also Keenan v. BNSF Ry. Co.*, No. C07-130BHS, 2008 WL 2434107, at *4 (W.D. Wash. 2008) ("Where release is pleaded as a defense, the burden of proof is on the employee to establish by a preponderance of the evidence that the release is invalid."); *Choate*, 2007 WL 2868027, at *5 (E.D. Mich. 2007); *Jaqua*, 274 Mich. App. at 548, 734 N.W.2d at 232. Accordingly, Plaintiff has the burden to demonstrate that the release is invalid as to the present claim for mesothelioma. *Loyal*, 234 Ga. App. at 703; 507 S.E.2d at 504. Illinois Central filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law based upon the Release signed by Mr. Blackmon. There was

no additional evidence presented to the trial court beyond the Release itself. Therefore, we must decide whether Illinois Central, by pointing to the Release, has affirmatively negated an essential element of the nonmoving party's claim or demonstrated that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d at 83.

The *Wicker* Court held that "a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed." Regarding the first issue, the Release executed by Mr. Blackmon was negotiated by Mr. Blackmon, his attorney, and Illinois Central, as part of the settlement of an existing claim. Therefore, the Release meets *Wicker*'s initial requirement that parties may settle where controversies exist as to whether there is liability.

The next step in the *Wicker* analysis requires us to evaluate the parties' intent at the time the agreement was made. We must determine whether the scope of the release is limited to those risks which were known to the parties at the time the release was signed, or, more specifically, whether the "controversies" that were part of the settlement included mesothelioma as a risk known to the parties. The *Wicker* Court said that "a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure—allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate § 5 of FELA." 142 F.3d at 701. A release that "chronicles the scope and duration of the known risks . . . would supply strong evidence in support of the release defense." *Id.* However, because of the ease of drafting "detailed boiler plate agreements" that "might well include an extensive catalog of every chemical and hazard known to railroad employment," the validity of the release does not turn on the writing alone. *Id.* In other words, the written release may be strong, but not conclusive, evidence as to the parties' intent in a FELA case. *Id.* "[W]here a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent." *Id.* This is a different (and more difficult) standard for railroad employers than is typical in non-FELA situations, but it is necessary, given the Supreme Court's pro-employee construction of the FELA. *Id.*

Here, it is clear from the plain language of the Release that its intent was to exempt Illinois Central from all potential liability related to Mr. Blackmon's employment. Like the releases at issue in *Wicker*, the Release executed by Mr. Blackmon appears to be a standard waiver of liability, with nothing to indicate that the parties understood, let alone addressed or discussed, the scope of the claims being waived. The Release attempts to cover a broad spectrum of potential liabilities of railroad employment, addressing "any and all claims, losses, damages and injuries directly or indirectly caused by or resulting from any alleged

exposure to asbestos, coal, coal dust, welding fumes, brass fumes, diesel fumes, dust, paint vapors, fuel fumes, methyl bromide, ammonia gas, sand, silica, and any and all other fumes, dusts, mists, gases, and vapors from any material, chemical, or agent which allegedly occurred while Dolphus Blackmon was in the employment of the parties released." It covered "any and all claims for any injuries, conditions or diseases, including mesothelioma, cancer, or other malignancies, which Dolphus Blackmon has against the parties released, including but not limited to any and all claims allegedly caused by or resulting from any alleged exposure of Dolphus Blackmon to any of the above-described materials, chemicals or agents which might have occurred at any time while Dolphus Blackmon was in the employment or environment of the parties released." It purportedly released Illinois Central from "any and all claims, losses, damages, injuries, conditions or diseases, including, but not limited to, pneumoconiosis, cancer, mesothelioma, or any other disease allegedly resulting in any manner from the employment of Dolphus Blackmon or any other medical condition allegedly related to the employment of Dolphus Blackmon with the parties released." The Release basically covered "any conditions arising while [Mr. Blackmon] was in the employment and environment of the parties released."

Illinois Central points out that the Release specifically referenced asbestos and mesothelioma. However, these terms were buried in a laundry list of other substances and diseases. A similar release was considered in *Illinois Cent. R.R. Co. v. McDaniel*, 951 So.2d 523, 530-32 (Miss. 2006), which addressed claims for "exposure of the undersigned to asbestos, coal dust, sand, silica, welding fumes, brass fumes, diesel fumes, fuel fumes, paint vapors, methylbromide, ammonia, gas, lead, PCB, dioxin, or other toxic or noxious chemical exposure and all other fumes, dusts, mists, gases and vapors from any chemical or agent." The Court found that this was "a 'laundry list' of potential claims from which [the railroad] sought exemption," listing asbestos simply as a generic hazard rather than including the specific risks of asbestos the employee faced. *Id.* at 532. In fact, the Court said "the broad verbiage of the release creates an anticipatory laundry list of possible injuries effectively throwing in everything but the kitchen sink." *Id.* In yet another FELA release case before the same Court, another railroad defendant similarly argued that because "asbestos" was specifically mentioned in the release at issue, it was a "known risk." *Acuff*, 950 So.2d at 960 (Miss. 2006). The Court rejected the railroad's suggestion that "any hazard may be classified as a known risk simply by listing it in a release," stating, "Clearly, more is required for a risk to be considered 'known.'" *Id.* The Court said the railroad's approach "does not address the question of whether the employee ever actually contemplated having the illness or injury being released," and it emphasized that "the key inquiry" was whether the risk of developing the illness was known and contemplated by the plaintiff at the time he signed his release.[10]

---

[10] In declining the railroad's invitation to look only to the terms of the release in order to establish
(continued...)

*Id.*; *see also **Clayton v. Burlington Northern & Santa Fe Ry. Co.***, No. 2:10-07082-ER, 2012 WL 5389803, at *1 (E.D. Pa. 2012) (finding that summary judgment was not warranted where a release purportedly released claims for "cancer" but there was no evidence the employee actually understood he was at risk of developing leukemia).

Likewise, the Release executed by Mr. Blackmon merely recited "a series of generic hazards to which [Mr. Blackmon] might have been exposed, rather than specific risks [he] faced during the course of [his] employment." *See **Wicker***, 701-702. The Release does not "chronicle[] the scope and duration" of the risks, and there is nothing to indicate that Mr. Blackmon knew of the actual health risks associated with asbestos, diesel fumes, dusts, mists, gases, vapors, chemicals, and the like, for which Illinois Central was being released.

We also find it significant that there is no *other* evidence in the record, aside from the Release itself, to suggest that the Release was intended to cover any future claim for mesothelioma.[11] *Cf. **Wicker***, 142 F.3d at 702 (considering testimony by the plaintiffs that they were unaware of their injuries and the cause thereof at the time they signed the releases as well as affidavits from the attorneys who represented the plaintiffs when the releases were executed); ***Presley***, 2012 WL 4120906, at *3 (E.D. Okla. 2012) (considering the employee's testimony about his intention); ***Loyal***, 234 Ga. App. at 703, 507 S.E.2d at 503 (finding that an employee was aware of the risk of hearing loss due to repeated mandatory hearing tests as part of his employment and his previous complaints to his supervisor regarding excessive noise); ***Jaqua***, 274 Mich. App. at 542, 734 N.W.2d at 229 (finding that lung cancer was a risk known to an employee because his doctor had advised him that he was at risk of developing lung cancer as a result of asbestos exposure); ***Sinclair***, 347 Mont. at 414, 200 P.3d at 60 (considering testimony of the employee, his attorney, and representatives of the railroad as to what they believed was covered by the release and concluding that a genuine issue of material fact existed regarding the parties' intent). According to ***Wicker***, a release may be "strong, but not conclusive," evidence of the parties' intent. 142 F.3d at 701.

---

[10](...continued)
the plaintiff's intent, the Court explained:

> Under general contract law, parties are usually free to contract away their rights, even those which are unknown and not contemplated. However, releases extinguishing an employee's claims for injuries under FELA are held to a higher standard, given the statutory language and Congress' stated intent in passing the Act.

*Acuff*, 950 So.2d at 960.

[11] We recognize that it may be difficult to come up with evidence regarding Mr. Blackmon's intent because he is deceased. However, we are reviewing a motion for summary judgment, so the question at this stage is whether Illinois Central has shown that Plaintiff *cannot prove* her claim at trial.

Although it may be likely that Mr. Blackmon was made aware that he was at risk of developing mesothelioma, either by his doctors, or by his attorney at the time, there is simply nothing in the record to prove such an awareness, and it would take an assumption on our part to reach that conclusion. At this stage in the proceedings we are required to view the evidence in the light most favorable to the nonmovant (here, Plaintiff), and we believe there is simply a gap in the evidence that we cannot overlook.[12] *See Wicker*, 142 F.3d at 702 (finding releases invalid to release claims for chemical exposure, even though they specifically listed exposure "to toxic substances of any kind" among the risks covered, because there was "no evidence that any of the plaintiffs, despite being represented by counsel, was aware of the potential health risks to which he had been exposed"); *Anderson*,

---

[12] We recognize that our conclusion on this issue appears to be at odds with the decision of the Supreme Court of Erie County, New York, in *Oliverio.* In that case, an employee had previously brought a claim against his railroad employer for lung related ailments due to asbestos exposure, and he had executed a release in connection with the settlement of that claim. 14 Misc.3d at 223. The employee later brought another claim against the railroad, alleging that the same asbestos exposure caused him to suffer from bladder cancer. The employee claimed that the previous release did not bar his claim because he had only intended to release his claims regarding lung ailments. The Court acknowledged that the issue of the enforceability of the release was "problematic," but it ultimately concluded that the release barred the bladder cancer claim, stating:

> The release is the product of a compromise between the parties, each represented by counsel, regarding a claim for exposure to asbestos. The instant claim is based upon the same exposure to asbestos. Plaintiff claims, even under the *Wicker* standard, that the risk of bladder cancer was not contemplated by the initial release and that it should not be enforced, in that the plaintiff intended in executing the release to compromise only his claim regarding lung and related ailments. While lung cancer and other lung ailments are the most common injuries caused by exposure to asbestos, the risks of asbestos exposure are known to be greater than simply lung ailments. The language of the release includes all cancers and fear of cancer in addition to certain lung ailments. While plaintiff may not have specifically known of the bladder cancer which he later contracted at the time of the compromise, []he *had to understand* that he was compromising his claim based upon asbestos exposure and any future claim based upon that exposure and that such claim would include cancers and other injuries which were specifically based upon asbestos exposure. In negotiating the settlement with plaintiff, defendant had a reasonable expectation of finality with respect to the specific claim of asbestos exposure, and the settlement paid was likely to have been based upon that expectation. While any other claim (e.g. exposure to other substances) should not be precluded by the release, it is appropriate to enforce the release in this action where the claim arises out of precisely the same asbestos exposure that was compromised in the earlier settlement and release.

*Id.* (Emphasis added). Thus, the Court granted summary judgment in favor of the railroad.

Considering the summary judgment standard applicable to the case before us, in addition to the fact that the only evidence in the record regarding the parties' intent is the Release, which is not conclusive, we find that summary judgment is inappropriate in the case before us.

154 Ohio App.3d at 403, 797 N.E.2d at 545 ("Representation by counsel [] cannot make an otherwise invalid release valid.").

In sum, the limited record before us does not contain evidence sufficient to demonstrate, conclusively, that Mr. Blackmon understood that he was at risk of developing mesothelioma, or, in other words, that it was a risk known to him, at the time the release was signed. The only evidence Illinois Central has submitted on this issue is the boilerplate Release itself, which contains the terms "mesothelioma" and "asbestos" buried in a laundry list of other conditions and substances. "Evaluating releases under Section 5 of FELA is undeniably a fact-intensive process, and an assessment of the parties' intent at the time of agreement 'is an essential element of this inquiry.'" *Acuff*, 950 So.2d at 960 (quoting *Wicker*, 142 F.3d at 700). Illinois Central has not submitted evidence demonstrating that Plaintiff *cannot prove* the invalidity of the Release at trial or *cannot prove* that Mr. Blackmon was not aware of the risk of mesothelioma when he signed the release. Therefore, we find that the trial court erred in granting summary judgment to Illinois Central based on the Release.

## V.  CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby reversed and the case is remanded for further proceedings. Costs of this appeal are taxed to the appellee, Illinois Central Railroad Company, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.